**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

AIR ALLIANCE HOUSTON
2409 Commerce Street, Suite A
Houston, TX 77003;

COMMUNITY IN-POWER AND DEVELOPMENT ASSOCIATION, INC
1301 Kansas Avenue;
Port Arthur, TX 77640;

LOUISIANA BUCKET BRIGADE
4226 Canal Street
New Orleans, LA 70119; and

TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES
6733 Harrisburg Boulevard
Houston, TX 77011;

Plaintiffs,

v.

Gina McCarthy, in her official capacity as Administrator, United States Environmental Protection Agency,
1101A EPA Headquarters, Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Defendant.

Case No. ______________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiffs Air Alliance Houston, Community In-Power and Development Association (CIDA), Louisiana Bucket Brigade, and Texas Environmental Justice Advocacy Services (TEJAS), (collectively, "Plaintiffs") bring this action pursuant to section 304(a)(2) of

the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. § 7604(a)(2), to compel Defendant Gina McCarthy, Administrator of the United States Environmental Protection Agency ("EPA"), to perform the nondiscretionary duties required by section 130 of the Act, 42 U.S.C. § 7430.  The Clean Air Act requires the Administrator to review and, if necessary, revise the emission factors used to estimate volatile organic compounds (VOCs) for emission sources once every three years.  EPA published a VOC emission factor for flares at natural gas production facilities in 1985 and continues to maintain this emission factor on its Web Factor Information Retrieval System, commonly referred to as WebFIRE.  The agency has not reviewed or revised this emission factor in accordance with its duty under Section 130 of the Clean Air Act since its original publication.  Because more than 30 years have passed since EPA last reviewed this emission factor, Plaintiffs seek a determination that the Administrator's failure to fulfill its obligation to perform the actions required by Section 130 violate the Clean Air Act and an order to compel the Administrator to fulfill its duty and take such action in accordance with an expeditious deadline set by this court.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 42 US.C. § 7604(a)(2) (action arising under the CAA citizen suit provision), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).  This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant further relief pursuant to 42 U.S.C. § 7604(a), (d) and 28 U.S.C. §§ 2201, 2202.

3.      Pursuant to section 304(a) of the CAA, 42 U.S.C. § 7604(a), "the district courts shall have jurisdiction . . . to order the Administrator to perform such act or duty [which is not discretionary]."

4. Plaintiffs have a right to bring this action pursuant to section 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2).

5. By certified letter posted September 30, 2015, Plaintiffs sent Administrator McCarthy written Notice of Intent to Sue ("Notice") and have thereby complied with the notice requirements of section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. pt. 54. More than 60 days have passed since Plaintiffs provided Notice. The Administrator has not responded to Plaintiff's Notice or remedied the alleged violations. Therefore, an actual controversy exists between the parties.

6. Venue is vested in this Court under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the Administrator's office is in the District of Columbia.

**PARTIES**

7. Plaintiff Air Alliance Houston is a nonprofit, non-membership organization, incorporated and existing under the laws of the State of Texas, located in Houston, Texas. Air Alliance Houston works to reduce air pollution exposure and related health effects on behalf of communities in the Houston region. Air Alliance Houston is concerned that inaccurate accounting of VOC emissions from natural gas production facilities in and around Houston, Texas undermine its efforts to reduce air pollution. Communities in the Houston region are vulnerable to VOCs emitted from Houston facilities because of: the toxins they contain and the smog they produce; the lack of accurate information about air pollutants, concentrations, and resulting exposures has made, and continues to make, it difficult for Houstonians to determine how to best protect themselves; the inaccurate emissions data caused by poor quality emissions factors has made, and continues to make, it difficult for community members to effectively

exercise their right to review and comment on CAA permits designed to protect ambient air quality; and, the underreporting of emissions may expose community members to pollutants at levels that are higher than the law allows and in concentrations deleterious to human health.

8.      Plaintiff Community In-Power and Development Association (CIDA) is a nonprofit, membership corporation located in Port Arthur, Texas.  CIDA advocates for its members' environmental justice, social, and economic rights.  CIDA is concerned about accurate accounting of VOC emissions from natural gas production facilities in or around Port Arthur.  CIDA brings this action on behalf of itself and its members that live, work, and recreate near natural gas production facilities in the Port Arthur area in Southeast Texas.

9.      Plaintiff Louisiana Bucket Brigade is a nonprofit, membership-based environmental health and justice organization located in New Orleans, Louisiana.  Its mission is to work with communities to create Louisiana neighborhoods that are free of toxic air pollution from refineries and other industrial sources.  Louisiana Bucket Brigade is concerned about accurate accounting of VOC emissions from Louisiana's natural gas production facilities.  Louisiana Bucket Brigade brings this action on behalf of itself and its members that live, work, and recreate near natural gas production facilities in the Port Arthur area in Southeast Texas.

10.     Plaintiff Texas Environmental Justice Advocacy Services (TEJAS) is a nonprofit corporation located in Houston, Texas.  TEJAS's mission is to create sustainable, healthy communities in the Houston Ship Channel region by educating individuals on health impacts from environmental pollution and empowering individuals to promote enforcement of environmental laws.  TEJAS is particularly concerned about accurate accounting of VOC emissions from natural gas production facilities in and around Houston. TEJAS brings this action

on behalf of itself and its members that live, work, and recreate near natural gas production facilities in the Port Arthur area in Southeast Texas.

11. Members of CIDA, the Louisiana Bucket Brigade, and TEJAS are exposed to VOCs, and the related toxins and smog, emitted from these facilities where they live and work; the lack of information about air pollutants, concentrations, and resulting exposures has made, and continues to make, it hard for them to determine how best to protect themselves; the inaccurate and poor quality of emissions data has made, and continues to make, it difficult for them to effectively exercise their right to review and comment on CAA permits designed to protect ambient air quality; and, the underreporting of emissions may expose members to pollutants at levels that are higher than the law allows and in concentrations deleterious to human health.

12. Defendant Gina McCarthy the Administrator of the EPA and in that role is charged with the duty to review and, if necessary, revise, the emission factors in accordance with Section 130 of the Act. 42 U.S.C. § 7430.

**LEGAL BACKGROUND**

13. The CAA was established "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population" and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b).

14. A "primary goal" of the Act is "pollution prevention." *Id.* § 7401(c).

15. As part of the regulatory framework prescribed by the Act to accomplish these objectives, EPA must establish "methods ('emission factors') used…to estimate the quantity of

emissions of . . . volatile organic compounds . . . from sources of such air pollutants." 42 U.S.C. § 7430.

16. EPA must periodically review and revise these emission factors. Section 130 provides that "at least every 3 years [after Nov. 15, 1990], the Administrator *shall* review and, if necessary, revise, the methods ('emission factors') used for purposes of [the CAA] to estimate the quantity of emissions of . . . volatile organic compounds . . . from sources of such air pollutants." 42 U.S.C. § 7430 (emphasis added). Section 130 requires that the Administrator complete a review, and either make a formal determination that revision is not appropriate, or revise the emission factors for VOCs within the statutory deadline. *See id.*

17. The timely review and, if necessary, revision of VOC emission factors is crucial to EPA's ability to implement the CAA in a manner that is protective of public health. The EPA recognizes that timely review and revision of emission factors is critical because new test data, information, and technology can render existing emission factors obsolete or prove them to be unreliable.

**FACTUAL BACKGROUND**

18. An emission factor is a "representative value" or "tool" used to estimate emissions of a specific pollutant from an air pollution source. EPA regulations define an "emission factor" as "the ratio relating emissions of a specific pollutant to an activity or material throughput level." 40 C.F.R. § 51.50.

19. EPA has also defined "emission factor" as "a representative value that attempts to relate the quantity of a pollutant released to the atmosphere with an activity associated with the release of that pollutant." Office of Air Quality Planning & Standards, Office of Air and Radiation, EPA, AP-42, Compilation of Air Pollutant Emission Factors Volume I: Stationary

Point and Area Sources 1 (5th ed. 1995), *available at* www.epa.gov/ttn/chief/ap42/index.html [hereinafter AP-42].  EPA guidance documents define emission factors as "a tool that is used to estimate air pollutant emissions to the atmosphere." Office of Air Quality Planning & Standards, Office of Air and Radiation, EPA, EPA-454/R-95-015, Procedures for Preparing Emission Factor Documents, 2-1 (1997), *available at* www.epa.gov/ttnchie1/efdocs/procedur.pdf.

20.     EPA's Web Factor Information Retrieval System, WebFIRE as it is commonly referred to, includes a VOC emission factor for natural gas production flares.  U.S. EPA, Technology Transfer Network Clearinghouse for Inventories & Emission Factors, https://cfpub.epa.gov/webfire/index.cfm?action=fire.showfactor&factorid=21958.  The VOC emission factor for natural gas production facility flares included in WebFIRE estimates that 5.6 pounds of VOCs are released from flares for every million cubic feet of gas produced. *Id*.  This factor appears to have been first published in the Agency's Criteria Pollutant Emission Factors for the 1985 National Acid Precipitation Assessment Program (NAPAP) Emission Inventory. U.S. EPA, Criteria Pollutant Emission Factors for the 1985 NAPAP Emissions Inventory, EPA/600/7-87/015, 107 (May 1987).  This document explains that the VOC emission factors for flares were estimated assuming 98% combustion efficiencies and were based on "speciated composites for ten natural gas samples" obtained from a study of natural gas heaters at refineries. *Id*. at 162.  EPA republished this factor in the 1990 revision of this document, but it does not appear that the Agency reviewed the basis for the factor at that time. U.S. EPA, AIRS Facility Subsystem Source Classification Codes and emission Factor Listing for Criteria Air Pollutants, EPA 450/4-90-003, 153 (Mar. 1990).

21.     The assumptions underlying the WebFIRE VOC emission factor for natural gas production facility flares are questionable.  First, EPA and the Bureau of Land Management have

finalized and proposed regulations to control VOC emissions from natural gas production facilities based on the understanding that flares in this sector only achieve 95% control. U.S. EPA Oil and Natural Gas Sector: Standards of Performance for Crude Oil and Natural Gas Production, Transmission, and Distribution: Background Technical Support Document for Proposed Standards, EPA-453/R-11-022, 7-15 (July 2011)("For this analysis, the types of combustors installed for the oil and gas sector are assumed to achieve 95% efficiency"); U.S. BLM, Waste Prevention, Production Subject to Royalties, and Resource Conservation; Proposed Rule, 81 Fed. Reg. 6,653; U.S. BLM, Regulatory Impact Analysis for Revisions to 43 CFR 3100 (Onshore Oil and Gas Leasing) and 43 CFR 3600 (Onshore Oil and Gas Operations, Additions of 43 CFR 3178 (Royalty-Free Use of Lease Production) and 43 CFR 3179 (Waste Prevention and Resource Conservation), 92 (Jan. 2016).  Second, the assumption that the composition of the gas used to fuel heaters at refineries is similar to the gas at natural gas production facilities is unsupported by any evidence.

22. Industry uses emission factors to report air pollution to EPA and state regulatory agencies.  EPA and state agencies rely on this data to develop national, regional, state, and local emissions inventories.  These emission inventories are the primary tool that EPA and state agencies use to develop emissions control strategies and make air quality management and permitting decisions. *Basic Emissions Factors Information*, Envtl. Prot. Agency, www.epa.gov/ttn/chief/efpac/abefpac.html (last updated Aug. 8, 2016).

23. "Emissions factors have long been the fundamental tool in developing national, regional, state, and local emissions inventories for air quality management decisions and in developing emissions control strategies.  More recently, emissions factors have been applied in determining site-specific applicability and emissions limitations in operating permits by federal,

state, local, and tribal agencies, consultants, and industry." *Id.*  For example, emission factors are used to calculate pollutant loadings used in the development of federally mandated air quality plans designed to reduce smog and other pollutants.  Emission factors may also be used to determine compliance; EPA and state agencies rely on the emission inventories—based on self-reported industry emissions calculated using emission factors—to set an emission limit that industry then demonstrates compliance with using emission factors.  In addition, regulated industries often use emission factors to determine if new or modified facilities will emit air pollution at levels that require a CAA permit and best available pollution control technologies.  Because poor quality emission factors can significantly underestimate pollution emissions, the use of inaccurate emission factors can result in the public being exposed to more air pollution than the law allows.

24. Natural gas production facilities utilize flares—which emit significant quantities of harmful VOCs and other toxic pollutants—in their operations.  Low income and minority communities suffer disproportionate health and environmental impacts due to their proximity to these industrial sources, raising environmental justice concerns.

25. Flares are used to control VOC releases from natural gas production facilities by combusting excess gases—mostly hydrocarbons—to convert them into inert compounds.  VOCs and other toxic pollutants are released from flares as a result of incomplete combustion.

26. VOC emissions endanger human health and the environment.  VOCs are substances that readily vaporize into the air, and include gaseous hydrocarbons and partially oxidized hydrocarbons.  VOCs and nitrogen oxides combine in a light-induced chemical reaction to produce photochemical smog, an air pollution event that is characterized by high levels of

ground-level ozone. Ozone is a criteria pollutant known to endanger public health and the environment.

> Ozone is associated with health effects such as respiratory morbidity such as asthma attacks, hospital and emergency department visits, school loss days and premature mortality, as well as injury to vegetation and climate effects.

Oil and Natural Gas Sector: New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants Reviews; Proposed Rule, 76 Fed. Reg. 52,738, 791 (Aug. 23, 2011). Some VOCs are also toxic pollutants, such as 1,3-butadiene, toluene, and benzene—a known carcinogen.

27. The existing emission factors used to estimate VOC emissions from flares at natural gas production facilities are outdated and based on unrepresentative data. The emission factors are based on assumptions that flares at natural gas production facilities achieve 98% control efficiency and that the gas burned at these flares is the same or similar to the gas burned to power heaters at petroleum refineries. Both of these assumptions are incorrect. EPA and BLM recently finalized rules that set control requirements for flares used in this sector assuming that these flares only achieve 95% control. Further, the available data shows that the characteristics of gas burned in refineries and natural gas production facilities differ in important ways that may cause significant differences in emissions.

28. As a result, emissions estimates derived from these emission factors may significantly underestimate emissions potentially exposing communities to excess levels of VOCs that are prohibited by law and causing significant adverse health effects and other grave risks to nearby communities.

29. Notwithstanding the poor quality of the emission factor for natural gas production facility flares, the Administrator has failed to complete a review and make necessary

revisions of these emission factors in over 30 years. The CAA requires the Administrator to do so once every three years. In light of EPA's longstanding failure to act, Plaintiffs issued a notice of intent to sue EPA for failure to comply with its statutory duties under section 130 of the CAA on September 30, 2015. *See* Ex. A.

## CAUSE OF ACTION

30. Plaintiffs re-allege and incorporate the allegations of all foregoing paragraphs.

31. The Administrator's ongoing failure to complete a Section 130 review, and either make a final determination that revision is not appropriate or revise the VOC emission factors for flares for natural gas production facility flares within the three-year statutory deadline constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of section 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that the Administrator's failure to complete a review of the VOC emission factors for natural gas production facility flares in the WebFIRE database in the time frame required by the Clean Air Act, and either make a final determination that revision is not appropriate or revise the emission factors within the statutory timeframe, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of section 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2);

D. Order the Administrator to complete the required Section 130 review and to either revise the VOC emissions factors for natural gas production facility flares in the WebFIRE database, or make a final determination that such revision is not appropriate, pursuant to section

130 of the CAA, 42 U.S.C. § 7430, in accordance with expeditious deadlines specified by this Court;

E. Retain jurisdiction of this action to ensure compliance with this Court's decree;

F. Award Plaintiffs the costs of this action, including attorney's fees; and

G. Grant such other relief as the Court deems just and proper.

DATED: October 6, 2016

Respectfully submitted,

/s/ Eric Schaeffer
Eric Schaeffer (D.C. Bar No. 427669)
Environmental Integrity Project
1000 Vermont Ave., Suite 1100
Washington, DC 20005
(202) 263-4440
eschaeffer@environmentalintegrity.org

/s/ Sparsh Khandeshi
Sparsh Khandeshi (D.C. Bar No. 1000899)
Environmental Integrity Project
1000 Vermont Ave., Suite 1100
Washington, DC 20005
(202) 263-4446
skhandeshi@environmentalintegrity.org

*Counsel for Air Alliance Houston, Community In-Power and Development Association, Louisiana Bucket Brigade, and Texas Environmental Justice Advocacy Services*